IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OMNIS HEALTH LIFE, LLC
    *Plaintiff*,

v.

Civil Action No. ELH-24-3642

OPTUM, INC., *et al.*
    *Defendants*.

**MEMORANDUM OPINION**

Plaintiff Omnis Health Life, LLC ("Omnis" or "Omnis Health") is "a minority and 100%

service-disabled Gulf War veteran-owned business, operating as a fully licensed opioid treatment

program" in Baltimore.  ECF 3 ("Complaint"), ¶ 9.  Omnis "offers healthcare services including

group and individual counseling, crisis intervention, and medication-assisted treatment." *Id.*

Omnis has filed a "Complaint For Conversion And Tortious Interference With Contractual

Rights" (ECF 3) against defendants Optum, Inc. ("Optum"); United Behavioral Health, Inc.

("UBH"); and the State of Maryland (the "State").  Plaintiff alleges, *inter alia*, interference with

contractual rights based on race, in violation of 42 U.S.C. § 1981, and race discrimination, in

violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*[1]  According to

plaintiff, defendants' "gross mismanagement, discriminatory practices, and systemic failures"

have caused plaintiff "devastating financial harm" and have "pushed" plaintiff "to the brink of

closure." *Id.* ¶ 1.  Further, plaintiff claims that defendants "have perpetuated a dysfunctional

system that disproportionately harms minority-owned clinics . . . ." *Id.*

---

[1] Suit was originally filed in the Circuit Court for Baltimore City.   Defendants removed
the case to federal court on December 17, 2024, based on federal question jurisdiction under 28
U.S.C. § 1331.  ECF 1.

Optum is incorporated under the laws of Delaware and has its principal place of business in Minnesota. *Id.* ¶ 10. Optum is "an affiliated parent company of Optum Maryland." *Id.* Through Optum Maryland, Optum "is the contracted Administrative Service Organization for Maryland's Public Behavioral Health System, and in that capacity, is responsible for managing the submission and reimbursement of claims submitted by healthcare providers, among other things." *Id.*

UBH is incorporated under the laws of California, with its principal place of business in San Francisco. *Id.* ¶ 11. UBH "regularly transacts business" in Maryland under the trade name "Optum Maryland." *Id.* "UBH, through Optum Maryland, shares responsibility in managing behavioral health reimbursements and claims processing alongside Optum." *Id.*

"Optum Maryland" and UBH are often used interchangeably for the same entity. I shall sometimes refer to Optum and UBH/Optum Maryland collectively as the "Optum Defendants."

The allegations against the State primarily involve the Maryland Department of Health ("MDH"), which "is the state agency responsible for operating Maryland's Public Behavioral Health System." *Id.* ¶ 12. "MDH, through its Behavioral Health Administration, contracted with Optum and UBH to manage the State's Public Behavioral Health System." *Id.*

The Complaint contains seven counts: (I) tortious interference with contractual rights based on race, lodged against Optum Maryland, in violation of 42 U.S.C. § 1981 (Count I); negligence (Count II); breach of fiduciary duty, asserted against Optum Maryland (Count III); tortious interference with business relationships, lodged against Optum Maryland (Count IV); conversion, asserted against the State and Optum Maryland (Count V); violation of Title VI of the Civil Rights Act of 1964, asserted against the State (Count VI); and breach of contract, based on a third-party beneficiary theory, lodged against Optum Maryland (Count VII). Only counts I and VI arise under federal law.

The State has moved to dismiss (ECF 18), supported by a memorandum (ECF 18-1) (collectively, "State's Motion"). The State urges dismissal of the Complaint for failure to exhaust administrative remedies, and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In addition, the State argues that plaintiff's tort claims are barred by the Maryland Tort Claims Act, Md. Code (2021 Repl. Vol., 2024 Supp.), § 12-101, *et seq.* of the State Government Article. Plaintiff opposes the State's Motion. ECF 21. The State replied. ECF 22.

The Optum Defendants have also moved to dismiss the Complaint. ECF 19. Their motion is supported by a memorandum (ECF 19-1) (collectively, the "Optum Motion") and several exhibits. ECF 19-2 through ECF 19-5. In particular, Optum moves to dismiss based on lack of personal jurisdiction, predicated on Fed. R. Civ. P. 12(b)(2). Moreover, they urge dismissal of the Complaint on the ground that plaintiff failed to exhaust its administrative remedies. Alternatively, the Optum Defendants argue that plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Plaintiff opposes the Optum Motion. ECF 20. The Optum Defendants replied. ECF 23. In a "Notice of Supplemental Authority," they notified the Court of Judge Hurson's decision in the case of *Healthcare Living for Families, Inc., v. Optum, Inc.*, BAH-25-79, 2025 WL 2300720, at *6 (D. Md. Aug. 8, 2025). ECF 24; ECF 24-1.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. In resolving the motions, I do not write on a blank slate. This case is similar to two others in this District filed by plaintiff's counsel. *See Healthcare Living for Families, Inc.*, BAH-25-79, 2025 WL 2300720; *Choice Pain & Rehab. Ctr., LLC v. Optum, Inc.*, DLB-24-2144, 2025 WL 948294 (D. Md. Mar. 28, 2025). I discuss those cases in more detail, *infra*.

For the reasons that follow, plaintiff's federal law claims (Counts I and VI) fail to state a claim upon which relief can be granted and thus are subject to dismissal, without prejudice, and

with leave to amend.  Because those claims form the basis for the Court's subject matter jurisdiction under 28 U.S.C. § 1331, I shall defer ruling on the remaining State law claims.  Given the posture of the case, it is premature to determine whether to exercise supplemental jurisdiction as to those claims, pursuant to 28 U.S.C. § 1367(a).

## I.  Factual Background[2]

 "Medicaid is a joint federal and state program that assists with medical costs for individuals with limited income and resources."  ECF 3, ¶ 14.  "Maryland administers Medicaid and pays medical bills using both federal and state funds."  *Id.*  "Under its Public Behavioral Health System, Maryland is obligated to reimburse healthcare providers for services rendered to Medicaid patients."  *Id.*

According to plaintiff, the State negligently selected Optum to serve as the Administrative Services Organization ("ASO") for Maryland's Public Behavioral Health System.  *Id.* ¶ 3.  When Optum took over as the ASO in 2020, its claims processing system failed.  *Id.*  As a result, plaintiff "experienced significant disruptions in the submission and processing of its claims, resulting in delayed and inaccurate reimbursements . . . ."  *Id.* ¶ 19.  Moreover, because of the system failures, "the State authorized more than $1 billion in estimated payments to providers based on 2019 claims data . . . ."  *Id.* ¶ 4.  However, the State then "allowed" Optum "to begin aggressive recoupment efforts without requiring proper documentation or validation of alleged overpayments . . . ."  *Id.*

Plaintiff also alleges that the State "has begun withholding 100% of weekly federal vendor payments owed to Omnis Health based on unsubstantiated debt calculations provided by Optum."  *Id.* ¶ 5; *see also id.* ¶ 42.  Further, plaintiff alleges that it submitted claims for Medicaid

---

[2] As to the Rule 12(b)(6) challenge, I must assume the truth of the facts alleged in the Complaint.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

reimbursements to Optum Maryland in accordance with applicable regulations, but Optum Maryland, without justification, denied plaintiff's reimbursements claims. *Id.* ¶¶ 69, 82.

### A. Optum Maryland's Systems Failures and Issuance of Estimated Payments

Optum Maryland has served as the ASO for Maryland's Public Behavioral Health System since January 2020, "managing the submission of claims and reimbursements for service providers . . . ." *Id.* ¶ 15. Plaintiff alleges that "Maryland failed to adequately vet Optum's experience or qualifications before awarding the [ASO] contract." *Id.* ¶ 17. In particular, plaintiff alleges that "Maryland failed to ensure Optum's claims processing system functioned properly before its January 2020 launch." *Id.* ¶ 18. Moreover, an audit conducted by the Maryland Department of Legislative Services in October 2022 "found that Maryland did not adequately scrutinize InfoMC, Optum's key subcontractor responsible for claims processing, despite InfoMC's documented history of failures in other states, including Ohio, California, and Washington." *Id.*

According to plaintiff, "from the outset of Optum Maryland's tenure as the ASO, Omnis Health experienced significant disruptions in the submission and processing of its claims, resulting in delayed and inaccurate reimbursements by Optum Maryland." *Id.* ¶ 19.[3] Plaintiff asserts, *id.*: "The issues were caused by Optum Maryland, specifically because of technical failures in its Incedo Provider Portal ("IPP")." The problems with the IPP "prompted Maryland to instruct Optum Maryland to issue 'estimated payments' to service providers in early 2020, including

---

[3] Plaintiff alleges that the State "declined to assess approximately $20.5 million in damages allowed under the ASO contract, including $25,000 per day for system failures." ECF 3, ¶ 29. "According to state auditors, Maryland feared that assessing these damages would trigger litigation or cause Optum's performance to deteriorate further." *Id.* Plaintiff alleges, *id.*: "Maryland's decision not to enforce the contract terms contributed to Optum Maryland's ongoing failure to properly process claims and provide transparency to providers."

Omnis Health." *Id.* ¶ 21.  Optum Maryland agreed to do so "until its system was corrected or restored." *Id.*  Through a partnership with "Payspan," Optum Maryland electronically transmitted the estimated payments on a weekly basis to Omnis Health and other healthcare providers.  *Id.*[4] The MDH "determined the estimated payment amount for most providers based on the average of all weekly payments made during the 2019 calendar year." *Id.* ¶ 22.  But, plaintiff "did not have the ability to reject the estimated payments." *Id.* ¶ 21.

The estimated payments "totaled approximately $1.06 billion in 2020," and "were necessitated by Maryland's failure to properly vet and test Optum's system." *Id.* ¶ 23.  "Maryland chose to base these estimates on service providers' 2019 claims data, despite knowing this approach would create significant reconciliation issues given how the COVID-19 pandemic had drastically altered service delivery patterns in 2020." *Id.*  Plaintiff alleges that, despite its "continuous services during the COVID-19 pandemic, Optum Maryland's estimated payments failed to reflect actual claims submitted, leading to substantial financial shortfalls." *Id.* ¶ 24.

### B.  Recoupments

In late 2020, "Optum Maryland unilaterally began deducting recoupments from Omnis Health's reimbursements," claiming that "these deductions were necessary to recover amounts from its estimated payments that Optum Maryland deemed to be overpayments." *Id.* ¶ 26.  Plaintiff did not "consent" to the "recoupments." *Id.*

In particular, in 2020 Optum Maryland allegedly withheld more than $400,000, without the consent of Omnis. *Id.* ¶ 32.  And, from 2020 through the filing of the Complaint, "Optum

---

[4]  Through Payspan, Optum Maryland could "electronically deposit reimbursement payments directly to a healthcare provider's bank account."  ECF 3, ¶ 25. Healthcare providers had "access to explanation of payments and payment reconciliation reports."  *Id.*

Maryland withheld more than $680,000 in claim reimbursement funds that Omnis Health was entitled to receive." *Id.*

According to Omnis, "Optum Maryland's recoupments went beyond the estimated payments period and involved improper withholding of reimbursements for legitimate claims submitted by Omnis Health." *Id.* ¶ 41; s*ee also id.* ¶ 27 ("Optum Maryland deducted recoupments from Omnis Health for more than 3 years, extending well beyond the period of the initial estimated payments made by Optum Maryland."). Optum Maryland did not reimburse Omnis "for the claims submitted to Optum Maryland during the period of time Optum Maryland's IPP system was inoperable." *Id.* ¶ 27. Moreover, despite Omnis's "repeated requests for detailed records," plaintiff alleges that Optum Maryland failed to provide Omnis "with any itemized accounting or documentation that would explain or justify the amounts being recouped and the remaining balance allegedly owed." *Id.* ¶ 28.

Plaintiff contends that "Optum Maryland's lack of transparency has made it impossible for Omnis Health to verify the accuracy of the recoupments or determine the legitimacy of Optum Maryland's claims." *Id.* ¶ 30. And, "Optum Maryland's failure to provide an itemized breakdown of the recoupments or the counterbalance for the submitted claims . . . deprived Omnis Health of the ability to challenge or rectify the deductions, leaving the clinic in a state of financial uncertainty." *Id.*

In addition, plaintiff asserts that "Optum Maryland has labeled its withholdings or deductions as 'negatives' and 'offsets,' which has created confusion as to the purpose of each withholding or deduction." *Id.* ¶ 31. Moreover, "Optum Maryland's inconsistent method of calculating payments and deductions, together with its unexplained changes in its handling and

processing of claims, has made it nearly impossible for Omnis Health to fully comprehend or verify the validity of the deductions." *Id.*

Further, plaintiff alleges that Optum Maryland's "improper recoupments" caused plaintiff "significant financial strain, which led to the involuntary cessation of its Intensive Outpatient Program (IOP) in 2023—a critical service in the recovery process for many of its clients." *Id.* ¶ 43. Omnis was also "forced to reduce its staff, and as a result, . . . could only provide services to 112 clients in the community, down from 250 clients." *Id.*

In September 2024, Omnis "noticed that Optum Maryland had recently deleted Omnis Health's estimated payment information and data from Optum Maryland's Payspan database for the following periods: (a) August 1, 2019 through December 31, 2019; (b) all of 2020; (c) all of 2021; (d) all of 2022; and (e) January 1, 2023 through March 1, 2023." *Id.* ¶ 40. Plaintiff alleges that Optum Maryland was "under a duty to preserve this information beginning in at least 2021, as Optum Maryland was placed on notice that litigation involving its calculation of estimated payments was reasonably anticipated to commence on behalf of Omnis Health." *Id.*

### C. Notice of Intent to Offset

The Central Collection Unit ("CCU") of the Maryland Department of Budget & Management ("DBM") issued a Notice of Intent to Offset ("NIO") to Omnis on August 31, 2024, "stating that the State of Maryland would be offsetting future federal vendor payments that were owed to Omnis Health to reduce an allege [sic] debt of $79,031.76." *Id.* ¶ 33; *see also* ECF 3-1 (NIO). Plaintiff asserts that the "alleged debt was based upon information Optum Maryland provided to the CCU." ECF 3, ¶ 33; *see also id.* ¶ 42. Yet, since "2020, Omnis Health repeatedly challenged the validity of debt that Optum Maryland alleged the business owed in connection with estimated payments Optum Maryland disbursed to Omnis Health in 2020." *Id.* ¶ 34.

According to Omnis, it "timely responded to the NIO and challenged the intended collection action," although the Complaint does not specify how or when. *Id.* Although the CCU "failed to acknowledge Omnis's Health's initial challenge to the NIO," the CCU acknowledged a "subsequent challenge to the intended collection action on or about October 24, 2024." *Id.*

Nevertheless, on or about October 24, 2024, the CCU withheld "$21,163.41" in claim reimbursements funds that Omnis "was entitled to receive in connection with services provided to patients covered by Medicare and/or Medicaid" for the week of October 21. *Id.* ¶ 35. Then, on or around October 31, 2024, "the CCU withheld $23,722.67 in claim reimbursement funds" for the week of October 28. *Id.* ¶ 36. Thereafter, on or around November 7, 2024, the CCU withheld "$21,087.52" in claim reimbursement funds for services provided to patients for the week of November 3. *Id.* ¶ 37. These three withholdings allegedly "amounted to 100% of the funds Omnis Health was scheduled to receive for services provided to Medicare and Medicaid patients" for the weeks in question. *Id.* ¶¶ 35, 36, 37.

Omnis asserts that Maryland, through DBM, "authorized and directed the withholdings" referenced above, despite: "(1) having actual knowledge of the systemic problems with Optum Maryland's claims processing system; (2) its own failure to properly oversee Optum Maryland's performance; (3) its decision not to assess contractual damages against Optum, UBH, or Optum Maryland; and (4) the absence of proper documentation validating the alleged debt." *Id.* ¶ 38. Plaintiff also states that Maryland decided to "proceed with aggressive collection actions through the CCU, while simultaneously failing to require Optum to properly document and validate alleged debts . . . ." *Id.* ¶ 39. Plaintiff also alleges that the State "continued to withhold funds that otherwise belonged to Omnis," even though Omnis "challenged the validity of the debt related to the withholdings" and did not "consent" to the withholdings. *Id.* ¶ 42.

### D.  Race Discrimination

Plaintiff asserts: "Optum Maryland has consistently provided preferential treatment to White-owned clinics, approving and reimbursing their claims under similar or identical circumstances where it denied or delayed reimbursements to Omnis Health and other minority-owned clinics."  *Id.* ¶ 45.  The Complaint provides several examples.

For instance, from January 2022 through May 2022, Optum Maryland "approved and paid nearly all reimbursement claims submitted by Veni Vidi Vici Treatment Services (VVV) and Outreach Recovery, two opioid and alcohol addiction treatment facilities owned by White individuals."  *Id.* ¶ 46.  According to plaintiff, "[b]oth clinics followed the same billing practices as Omnis Health when submitting claims to Optum."  *Id.*  Yet, plaintiff's "claims were systematically denied during the same period without any justification or material difference in claim submission."  *Id.*

During the same time period, January 2022 through May 2022, Optum Maryland "approved the reimbursement claims of Clearway Pain Solutions (CPS) and Principle Diagnostics, both White-owned healthcare providers operating in Maryland."  *Id.* ¶ 47.  Further, plaintiff alleges, *id.*: "CPS, like Omnis Health, provided pain management and substance abuse treatment services, yet Optum Maryland consistently processed and approved CPS's claims, while repeatedly rejecting or delaying payments to Omnis Health, despite identical billing practices and services rendered."

In addition, plaintiff alleges that Choice Pain & Rehabilitation Center, LLC ("Choice Pain"),[5] another "minority-owned business, faced nearly identical discriminatory treatment by

---

[5] As I discuss in more detail, *infra*, Choice Pain also filed suit in Maryland against the Optum Defendants.  *See* DLB-24-2144.  Following removal of the case to federal court, Judge Boardman dismissed the case against Optum for lack of personal jurisdiction, pursuant to Fed. R.

Optum Maryland." *Id.* ¶ 48.  According to plaintiff, "Choice Pain, which submitted claims using the same or substantially similar billing practices as White-owned clinics, saw its claims denied or rejected by Optum Maryland during the same period." *Id.*  Plaintiff asserts, *id.*: "The only discernible difference between Choice Pain and the other clinics was the racial composition of their ownership, further reinforcing the conclusion that Optum Maryland's conduct was racially motivated."

Plaintiff also alleges that Optum Maryland afforded Silverman Treatment Center ("Silverman"), "a larger, non-minority-owned treatment facility in Columbia, Maryland, substantially more" favorable treatment "than Omnis Health with respect to alleged overpayments from the estimated payment period." *Id.* ¶ 49.  According to Omnis, Optum Maryland "aggressively pursued full recoupment" from Omnis but "partially forgave alleged overpayments made to Silverman . . . during the same period." *Id.*  In plaintiff's view, the "only meaningful distinctions" between Omnis and Silverman "are the racial composition of their ownership and their relative size," which illustrates "Optum Maryland's pattern of preferential treatment toward larger, White-owned healthcare providers." *Id.*

In addition, plaintiff alleges that "White-owned clinics were not subjected to the same delays, denials, or lack of transparency" to which Omnis was subjected. *Id.* ¶ 50.  In plaintiff's view, Optum's conduct "reflect[s] a pattern of discrimination, whereby White-owned clinics are afforded preferential treatment in the claims reimbursement process, while minority-owned clinics like Omnis Health are unfairly denied the same privileges." *Id.* ¶ 51.  According to plaintiff, "[t]he result of this disparate treatment has been catastrophic for Omnis Health, forcing it to reduce or

---

Civ. P. 12(b)(2). *Choice Pain & Rehab. Ctr., LLC*, 2025 WL 948294, at *5.  And, she dismissed all of the claims against Optum Maryland, pursuant to Fed. R. Civ. P. 12(b)(6).  *See id.* at *5–*9.

eliminate critical programs, such as its Intensive Outpatient Program, driving under the influence services, and mental health services, and ultimately jeopardizing its financial viability." *Id.*

Omnis contends that Optum Maryland's "discriminatory intent is evidenced by its preferential treatment of White-owned clinics, which received timely reimbursements for their claims while Omnis Health, a minority-owned clinic, was subjected to repeated delays and denials." *Id.* ¶ 57. Omnis also asserts that the "only material differences" between Omnis and the "comparators" are the "minority ownership status and the racial demographic of the clients being serviced by" Omnis. *Id.* In plaintiff's view, this "create[s] at least an inference that race was the determining factor" in the "adverse treatment" of Omnis. *Id.* Plaintiff adds that Optum Maryland's "discriminatory interference" with the "contractual rights" of Omnis "was intentional and motivated by race" and caused "substantial financial harm" to Omnis. *Id.* ¶ 59.

## II. Fed. R. Civ. P. 12(b)(6)

Optum Maryland seeks, *inter alia*, dismissal of Count I (violation of 42 U.S.C. § 1981), pursuant to Rule 12(b)(6). The State also seeks dismissal of Count VI (violation of Title VI of the Civil Rights Act of 1964), based, *inter alia*, on failure to state a claim.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a

plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . "); *Seabrook v. Driscoll*, __ F.4th __, 2025 WL 2202135, at *2 (4th Cir. Aug. 4, 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). A plausible claim is more than merely conceivable or speculative. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere

13

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Hebb v. City of Asheville, N. Carolina*, __ F.4th __, 2025 WL 2055074, at *4 (4th Cir. July 23, 2025); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).  Nor does the court accept "'legal conclusions couched as facts . . . .'"  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Ordinarily, when ruling on a Rule 12(b)(6) motion, a court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6)

"is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Under limited circumstances, however, a court may consider documents beyond the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166

(citations omitted); *see also Doriety*, 2024 WL 3558754, at *6; *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.*, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam).

But, it is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc.*, 551 U.S. at 322; *Katyle*, 637 F.3d at 466; *Philips*, 572 F.3d

at 180.  However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

A court "may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."  *Brown v. Ocwen Loan Servicing, LLC*, PJM 14-3454, 2015 WL 5008763, at *1 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).  And, the Fourth Circuit has stated that a district court may take "judicial notice of its own records."  *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); *see also Thurman v. Robinson*, 51 F.3d 268, 1995 WL 133350, at *2 (4th Cir. Mar. 28, 1995) (per curiam); *United States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir. 1964).

### III.  Tortious Interference with Contract Based on Race, 42 U.S.C. § 1981 (Count I) – Optum Maryland

In general, Count I is based on the following allegation, ECF 3, ¶ 56: "From January 2020 through present, Optum Maryland regularly denied Omnis Health's reimbursement claims while approving and processing claims submitted by similarly situated White-owned clinics, including Veni Vidi Vici Treatment Services, Outreach Recovery, and Clearway Pain Solutions, all of which engaged in the same or substantially similar billing practices as Omnis Health."

### A.  Legal Standard

Section 1981 "guarantees to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'"  *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting 42 U.S.C. § 1981(a)); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006); *BNT Ad Agency, LLC v. City of Greensboro,* 837 F.

App'x 962, 969 (4th Cir. 2020); *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). "Although Section 1981 does not explicitly use the word 'race,' the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts." *Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 156 (4th Cir. 2018) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)).

Section 1981 defines "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The phrase "make and enforce contracts" "embrace[s] all phases and incidents of the contractual relationship . . . ." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994).

In the context of a § 1981 cause of action concerning the purchase of goods or services, a plaintiff must prove, *inter alia*, that he "met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers[.]" *Williams*, 372 F.3d at 667; *see also Jarvis v. Wells Fargo Bank, N.A.*, DLB-21-687, 2022 WL 4234835, at *2 (D. Md. Aug. 26, 2022), *aff'd,* 2023 WL 8230506 (4th Cir. Nov. 28, 2023) (per curiam).

In general, courts "judge section 1981 racial discrimination claims under the same standards as Title VII." *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 495 (D. Md. 2013), *aff'd sub nom. In re Canarte*, 558 F. App'x 327 (4th Cir. 2014); *see also BNT Ad Agency, LLC,* 837 Fed. App'x at 969–70; *Gary v. Facebook, Inc.*, 822 Fed. App'x 175, 179–80 (4th Cir. 2020); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).  At the motion to dismiss stage, the question is whether the plaintiff has alleged facts that plausibly state a violation "'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (citation omitted) (concerning Title

VII).  In other words, "to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to [the] legal requirements" for a § 1981 claim.  *Nadendla*, 24 F.4th at 305; *see also Connolly v. Lanham*, 685 F. Supp. 3d 312, 324 (D. Md. 2023) (explaining that for a plaintiff's "discrimination claim to be 'plausible,' this Court need not decide which version of events is most likely, but rather, simply, whether Plaintiffs' allegations could have happened.").

To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest."  *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).  Of import, "[a] plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race."  *Nadendla*, 24 F.4th at 305.  In *Comcast Corp. v. Nat'l Association of African American-Owned Media*, 589 U.S. 327, 341 (2020), the Supreme Court said: "To prevail [on a section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  The Court noted that the § 1981 but-for causation standard is in contrast to the "motivating factor" test that is used, for example, in the Title VII employment discrimination context.  *Id.* at 340–41; *see also Gary*, 822 Fed. App'x at 180 (noting that in *Comcast Corp.* "the Court held that a § 1981 plaintiff must prove that race was a but-for cause of the plaintiff's injury").

Broken into elements, to state a claim under § 1981, a plaintiff "must allege facts that, if accepted as true, allow the court to draw a reasonable inference" that (1) the plaintiff is a member of a protected class; (2) "the defendant intended to discriminate on the basis of race;" (3) "the discrimination interfered with a contractual interest;" and (4) "the interference with a contractual interest would not have happened but for the plaintiff's race."  *Choice Pain & Rehab. Ctr.*, 2025

WL 948294, at *5 (citation and internal quotations omitted); *see Nadendla*, 24 F.4th at 305 ("Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference" as to those elements); *Cofield v. Worktime, Inc.*, SAG-22-1370, 2022 WL 3716566, at *6 (D. Md. Aug. 29, 2022) ("A § 1981 claim requires proof that a plaintiff is a member of a racial minority; that a defendant acted with an intent to discriminate against the plaintiff on the basis of race; and that the defendant's race discrimination concerned plaintiff's 'making, performance, modification, and termination of contracts' or the 'enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'") (quoting *Habash v. City of Salisbury, Maryland*, 618 F. Supp. 2d 434, 442 (4th Cir. 2009)); *Awah v. Mansfield Kaseman Health Clinic*, PX-21-0938, 2021 WL 6197415, at *7 (D. Md. Dec. 30, 2021) (similar).

At the motion to dismiss stage, the Fourth Circuit has made clear that a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination. . . ." *Woods*, 855 F.3d at 648; *see McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that, at the pleading stage in a discrimination lawsuit, a plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss."); *Connolly*, 685 F. Supp. 3d at 323 (explaining that, "at the motion to dismiss stage, Plaintiffs do not need to establish a prima facie case [under § 1981]; they need only plausibly allege that Defendants discriminated on the basis of their race."). Nevertheless, reference to the prima facie standard is helpful in determining whether a plaintiff has plausibly alleged that its contractual rights were interfered with because of racial discrimination. *See Woods*, 855 F.3d at 649; *Jarvis*, 2022 WL 4234835, at *2–*3. Of import, a "complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed. App'x 745, 747 (4th Cir. 2017) (per curiam); *see McCleary-Evans*, 780

F.3d at 584–85; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Brown v. Harford Bank*, ELH-21-096, 2022 WL 657564, at *11 (D. Md. Mar. 4, 2022) (recognizing that "reference to the elements of a prima facie [§ 1981] claim can help to gauge the adequacy of the Amended Complaint's allegations. . . . [T]he analysis at this stage turns on whether plaintiff has plausibly alleged facts that, if taken as true, allow the Court to draw a reasonable inference of intentional, but-for racial discrimination.").

In the Complaint, Omnis does not allege direct evidence of discrimination. *See* ECF 3. Instead, it bases its discrimination claim on Optum Maryland's alleged preferential treatment of comparators. *See id.* ¶¶ 45–49; 56–57.

A plaintiff "is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim," *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003), "so long as the plaintiff can establish an inference of unlawful discrimination through other means." *Swaso*, 698 Fed. App'x at 748; *see Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam); *Jarvis*, 2022 WL 4234835, at *3. But, where a plaintiff has based its allegations "completely upon a comparison," a plaintiff must allege "that they are similar in all relevant respects to their comparator." *Haywood*, 387 F. App'x at 359; *see Irani v. Palmetto Health*, 767 Fed. App'x 399, 420 (4th Cir. 2019) (per curiam); *Coleman*, 626 F.3d at 191; *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008); *Hayes v. Wall Recycling, LLC*, 729 F. Supp. 3d 553, 561 (E.D.N.C. 2024); *Sillah v. Burwell*, 244 F. Supp. 3d 499, 512 (D. Md. 2017).

As to disparate treatment, the "element is met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Swaso*, 698 Fed. App'x at 747 (citation omitted). Notably, "questions about the suitability of comparators 'are inherently fact-based and

should not be resolved at the pleadings stage where [Plaintiff] has alleged enough facts to permit

a plausible inference that' she experienced discrimination." *Hammoud v. Jimmy's Seafood, Inc.*,

618 F. Supp. 3d 219, 235 (D. Md. 2022) (citation omitted; alteration in *Hammoud*).  In other words,

the "similarly situated analysis typically occurs in the context of establishing a *prima facie* case of

discrimination, not at the 12(b)(6) stage."  *Woods*, 855 F.3d at 651.

## B.  Discussion

Optum Maryland contends, *inter alia*, that the Complaint fails plausibly to allege

intentional discrimination and but for causation.  Omnis disagrees.

According to plaintiff, the Complaint alleges that "Defendants knew that Omnis Health

was a minority-owned business."  ECF 20 at 18.  But, the Complaint makes no such allegation.

To be sure, Omnis alleges that it *is* a minority-owned business.  ECF 3, ¶¶ 2, 57.  But, it does not

allege that Optum Maryland *knew* that Omnis is a minority-owned business or that Optum

Maryland *knew* the race of Omnis's owner.  *See generally* ECF 3.

Notably, the Complaint does not identify the race of Omnis's owner.  *Id.*  Moreover, there

are no facts from which to infer that Optum Maryland was aware that Omnis is a minority-owned

business.  For example, plaintiff does not allege that its owner or owners ever communicated with

Optum Maryland in person or that it had registered as a minority-owned business.  Nor does

plaintiff allege that Optum Maryland "ever made racially insensitive comments," "discussed race

with" plaintiff, or "referred to [plaintiff's] race in any manner."  *See Mears v. Allstate Indem. Co.*,

336 F. Supp. 3d 141, 150–51 (E.D.N.Y. 2018).

As Optum Maryland points out (ECF 19-1 at 15–16),  these kinds of omissions have led to

the dismissal of § 1981 claims.  *See, e.g.*, *Healthcare Living for Families, Inc.*, 2025 WL 2300720,

at *6 (dismissing § 1981 claim because, *inter alia*, the plaintiff did "not even allege that [Optum

Maryland] was aware of the race of [the plaintiff's] owners."); *Choice Pain & Rehab. Ctr., LLC*, 2025 WL 948294, at *6 (dismissing § 1981 claim because, *inter alia*, the plaintiff did "not plead facts that suggest . . . Optum Maryland even knew the specific race of [the plaintiff's] owners."); *Cofield v. Worktime, Inc.*, SAG-22-1370, 2022 WL 3716566, at *6 (D. Md. Aug. 29, 2022) (dismissing § 1981 claim because, *inter alia*, the plaintiffs did not allege "any race-based comments or any interactions or documentation suggesting that the Progressive Defendants were even aware of Plaintiffs' race."); *Cotton v. Cnty. of San Bernardino*, No. EDCV182343VAPAGR, 2020 WL 5900154, at *22 (C.D. Cal. Sept. 1, 2020) (recommending dismissal of § 1981 claim on the ground that, among other things, the complaint "contains no facts supporting a plausible inference that [the defendant] was aware of Plaintiff's race . . . ."), *report and recommendation adopted*, No. EDCV182343VAPAGR, 2020 WL 5892026 (C.D. Cal. Oct. 2, 2020); *Sewell v. Am. Educ. Servs./Pheaa*, DKC-15-3076, 2016 WL 3460095, at *3 (D. Md. June 24, 2016) (dismissing § 1981 claim because, among other things, the plaintiff set "forth no facts plausibly alleging that Defendant was even aware of her race, let alone that it failed to consolidate the Nova loan because of her race."), *aff'd*, 670 F. App'x 184 (4th Cir. 2016) (per curiam); *Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, No. CIV.A. 13-305, 2013 WL 1389755, at *3 (E.D. Pa. Apr. 5, 2013) (dismissing § 1981 claim because, among other reasons, the "amended complaint does not identify plaintiff's race or describe how [the defendant], whom plaintiff communicated with via phone and email, would have been aware of plaintiff's race."), *aff'd*, 532 F. App'x 89 (3d Cir. 2013); *see also Cerqueira v. Am. Airlines, Inc.*, 520 F.3d 1, 18 (1st Cir. 2008) (because there was "no evidence that the [defendant] was aware of the plaintiff's appearance, race, or ethnicity," the "§ 1981 claim against the [defendant] fails . . . ."); *cf. Kiver v. Fed. Bus. Couns., Inc.*, BAH-23-3398, 2024 WL 3424059, at *7 (D. Md. July 16, 2024) (collecting cases in which a plaintiff failed

to plausibly allege/prove discrimination because they failed to plead/establish that the defendant was aware of their membership in a protected class).

Common sense dictates that to discriminate intentionally based on race, the defendant must know the plaintiff's race. *See Fagerstrom v. City of Savannah, Ga.*, 627 F. App'x 803, 805 (11th Cir. 2015) (per curiam) ("Without *knowledge* of [the plaintiff]'s Asian racial identity, [the defendant] cannot have acted with an *intent* to discriminate based on that identity.") (emphasis in *Fagerstrom*); *Dowe v. Total Action Against Poverty In Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (stating, in employment retaliation case, that "by definition, an employer cannot take action because of a factor of which it is unaware, [and therefore] the employer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish . . . a prima facie case."); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) ("Haeger could not discriminate against Pressley on account of race if he did not know Pressley's race."); *Mears*, 336 F. Supp. 3d at 151 ("Without alleging whether the Defendants were aware of the Plaintiff's race, [the plaintiff] cannot claim that the Defendants intended to discriminate against him because of his race."); *Nizami v. Hartford Fin. Servs. Grp., Inc.*, No. 3:10CV970 SRU, 2012 WL 3596482, at *5 (D. Conn. Aug. 20, 2012) ("In order to demonstrate that a decisionmaker discriminated on the basis of race, the plaintiff must demonstrate that the decisionmaker was aware of the plaintiff's race.").

Judge Hurson's recent decision in *Healthcare Living for Families, Inc.*, 2025 WL 2300720, is informative. There, as in this case, a behavioral healthcare provider filed suit against the Optum Defendants and the State based, *inter alia*, on racial discrimination in processing reimbursement claims. *Id.* at *1. Judge Hurson dismissed the § 1981 claim against Optum Maryland. He reasoned, *id.* at *6 (internal citations omitted):

> [The plaintiff] does not even allege that [Optum Maryland] was aware of the race
> of [the plaintiff]'s owners. Thus, [the plaintiff] is unable to show that but for the

race of its owners, [Optum Maryland] would not have interfered with the contractual arrangements. Contrary to Plaintiff's assertions, it must actually make such an allegation at the pleading stage.

Similarly, in *Choice Pain & Rehab. Ctr., LLC*, 2025 WL 948294, another case with similar facts, Judge Boardman also dismissed the § 1981 claim against Optum Maryland. She concluded that the plaintiff failed to allege that Optum Maryland was even aware of the race of the plaintiff's owner. *Choice Pain & Rehab. Ctr., LLC*, 2025 WL 948294, at *6.

Notably, in both cases, the plaintiffs alleged that Optum Maryland was aware that the plaintiff was a minority-owned business. *See Healthcare Living for Families, Inc.*, BAH-25-79, ECF 11, ¶ 68 ("Optum and UBH knew that [the plaintiff] was a minority-owned business at all relevant times"); *Choice Pain & Rehab. Ctr., LLC*, DLB-24-2144, ECF 2, ¶ 36 (alleging that Optum and Optum Maryland "knew that [the plaintiff] was a minority-owned business.").[6] Yet, those allegations were not regarded as sufficient. Here, Omnis does not even allege that Optum Maryland knew that Omnis is a minority-owned business. *See ECF 3.*

*Mears*, 336 F. Supp. 3d, is also informative. There, the plaintiff filed suit against his insurance company and the agency through which he obtained the insurance policy in issue. *Id.* at 144. The plaintiff alleged that his insurance company disclaimed coverage regarding the theft of his personal property on the basis of race. *Id.* In dismissing the § 1981 claim, the court reasoned, *id.* at 150–51 (emphasis added):

> The Plaintiff has failed to allege whether any employees at either of the Defendants were aware of the Plaintiff's race at any point prior to the denial of the claim. Mears does not specify if he was ever required to disclose his race on any paperwork nor does he provide enough detail to construe any instance where the Defendants may have become aware of his race. An examination of the supporting insurance documents integral to the complaint do not reveal any reference to the fact that the Plaintiff is African-American nor any information that can lead the Court to such a

---

[6] I may take judicial notice of these allegations. *Anderson*, 918 F.2d at 1141 n.1 (a district court may take "judicial notice of its own records."); *see also Brown,* 2015 WL 5008763, at *1.

conclusion. For instance, the Plaintiff does not contend that the Plaintiff lives in a predominantly African-American neighborhood, nor that any employee of the Defendants ever interacted with him face-to-face. *Without alleging whether the Defendants were aware of the Plaintiff's race, Mears cannot claim that the Defendants intended to discriminate against him because of his race.*

The same reasoning applies here. However, even if the omission concerning knowledge of the race of plaintiff's owner is not dispositive, the Complaint otherwise fails under Rule 12(b)(6).

In support of plaintiff's claim that Optum Maryland intentionally discriminated against plaintiff on the basis of race, plaintiff relies entirely on comparator allegations. But, the Complaint does not plead facts that allow the Court to infer that Optum Maryland knew the racial makeup of the ownership of the comparator companies.

According to plaintiff, from January 2022 through May 2022, Optum Maryland "approved and paid nearly all" reimbursement claims submitted by Veni Vidi Vici Treatment Services and Outreach Recovery, two "opioid and alcohol addiction treatment facilities owned by White individuals" who engaged in the "same billing practices" as plaintiff. ECF 3, ¶ 46. Moreover, during that same time period, Optum Maryland allegedly "approved the reimbursement claims of Clearway Path Solutions . . . and Principle Diagnostics," both of which are "White-owned" companies that engaged in "identical billing practices" as plaintiff and rendered identical "services" as plaintiff. *Id.* ¶ 47. And, Optum Maryland allegedly forgave, in part, overpayments made to Silverman, another "non-minority owned" facility, yet it "aggressively pursued full recoupment" from plaintiff. *Id.* ¶ 49. Further, plaintiff alleges that Choice Pain, "a minority-owned business," submitted claims "using the same or substantially similar billing practices as White-owned clinics," yet its claims were "denied or rejected by Optum Maryland during the same

time period." *Id.* ¶ 48.[7] Critically, the Complaint contains no facts that would allow the inference that Optum Maryland was aware of the racial makeup of the ownership of the comparator companies.

Plaintiff also fails plausibly to allege facts that, if proved, would establish that Optum Maryland issued delayed payments to plaintiff, or denied plaintiff's reimbursement claims, because of plaintiff's race.

For example, plaintiff alleges that Optum Maryland has engaged in a "pattern of preferential treatment toward *larger*, White-owned healthcare providers." *Id.* ¶ 49 (emphasis added).[8] Omnis also suggests incompetence on the part of Optum Maryland as a reason for delayed and inaccurate reimbursements. According to Omnis, from the "outset of Optum Maryland's tenure as the ASO, Omnis Health experienced significant disruptions in the submission and processing of its claims, resulting in delayed and inaccurate reimbursements by Optum Maryland." *Id.* ¶ 19.

Of import, Omnis attributes these delayed and inaccurate reimbursements to "technical failures" of Optum Maryland's IPP system. *Id.*; *see also id.* ¶ 3 (alleging that Optum had "limited experience managing state behavioral health systems" and that the State "failed to adequately vet

---

[7] As noted, Choice Pain filed suit against Optum Maryland. Of relevance, in dismissing Choice Pain's § 1981 claim, Judge Boardman stated that, "by Choice Pain's own allegations, Optum Maryland had a non-discriminatory reason to reject its claims." *Choice Pain & Rehab. Ctr., LLC*, 2025 WL 948294, at *6. Specifically, a letter from the MDH to Choice Pain stated that the claim denials "were a result of your provider file not being set up correctly to bill the Behavioral Health Administrative Services Organization due to an issue with your [National Provider Identifier]." *Id.* (emphasis omitted).

[8] I am mindful that the "similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage." *Woods*, 855 F.3d at 651. But, plaintiff's allegation is noteworthy, because plaintiff has alleged a race-neutral reason for Optum Maryland's actions.

Optum's qualifications or test its claims processing systems before the January 2020 launch, leading to an immediate and catastrophic failure that has persisted for nearly five years"); *id.* ¶ 18 (alleging that the State was negligent by failing to "adequately scrutinize InfoMC, Optum's key subcontractor responsible for claims processing, despite InfoMC's documented history of failures in other states . . ."); *id.* ¶ 29 (referring to "Optum Maryland's clear failure to provide a functional claims processing system . . . ."); *id.* ¶ 64(f) (alleging that the State was negligent by allowing "Optum to continue operating a defective claims processing system for over three years"). Therefore, by plaintiff's own allegations, it was Optum Maryland's systems failures, not race, that caused delayed or inaccurate reimbursements.

Moreover, Omnis alleges that beginning in late 2020 (ECF 3, ¶ 26), Optum Maryland deducted recoupments "for more than 3 years." *Id.* ¶ 27. Therefore, it appears that during the time period for which plaintiff alleges racial discrimination—January 2022 through May 2022—Optum Maryland may have denied plaintiff's claims as part of its effort to recoup alleged overpayments made to plaintiff through the estimated payments issued in "early 2020." *Id.* ¶ 21.[9] Pursuant to Code of Maryland Regulations ("COMAR") § 10.09.36.07(B), plaintiff is bound to "reimburse [the MDH] for any overpayment." Yet, as Optum Maryland argues, "the Complaint fails to plead any specific facts showing that any asserted offsets exceeded the estimated payment advances that Omnis received." ECF 19-1 at 16.

*Jarvis*, 2022 WL 4234835, is instructive. There, the plaintiffs, a mother and son, alleged that Wells Fargo Bank discriminated against them on the basis of race "by denying them banking services . . . ." *Id.* at *1. For purposes of their § 1981 claim, however, the plaintiffs alleged that

---

[9] It is not clear from the Complaint whether the recoupments and claims denials are connected or, instead, distinct.

they "'met [the] requirements to receive goods and services at Wells Fargo in looking to open a bank account.'"  *Id.* at *3.  The court dismissed the claim, reasoning, *id.*: Plaintiffs "cite no additional facts supporting this recitation of an element of the claim that would allow the Court to plausibly infer the ordinary requirements for cashing a check or opening a bank account or that they met those requirements."  The *Jarvis* Court's reasoning is persuasive here.

As Optum Maryland points out, the Complaint "does not state facts showing entitlement to any claim payments at all, let alone that Omnis was entitled to receive or retain payments 'but for' the race of its owners."  ECF 19-1 at 16.  To be sure, at this stage of the litigation, plaintiff need not specifically plead every detail underlying the reimbursement claims it submitted to Optum Maryland.  However, plaintiff's allegations are conclusory.

In particular, plaintiff merely alleges that: (1) it was "entitled" to receive reimbursements from Optum Maryland, ECF 3, ¶ 32; (2) Optum Maryland recouped funds that Optum Maryland was "not entitled to recoup," *id.* ¶ 41; and (3) Optum Maryland withheld reimbursements "owed" to plaintiff.  *Id.* ¶ 58.  But, plaintiff does not allege *facts* to support its claims; mere labels and conclusions are not enough.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Nadendla*, 24 F.4th at 305 ("'Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard.'") (citation omitted).

Indeed, plaintiff does not provide a single example of a claim that it timely submitted to Optum Maryland that was allegedly denied wrongfully.  Nor does it provide any facts to support its assertion that it was "entitled" to or "owed" money from Optum Maryland.  *See generally* ECF 3.  As Optum Maryland puts it, the Complaint "does not identify any specific claims transaction and fails to allege basic facts about those transactions, such as when the claims were submitted,

when the services were rendered, the amount charged on the claims, the amounts paid on the claims, the specific services charged, or the claim-payment amounts denied or offset." ECF 19-1 at 17.

Omnis counters that "much of the specific claims data" at issue is "exclusively" in Optum Maryland's "control." ECF 20 at 21. To be sure, to state a plausible claim, plaintiff need not allege all of the details and specifics of the claims that it contends Optum Maryland improperly denied. But, plaintiff has not provided *any* factual allegations to support its conclusory statements. It merely contends that from "2020 through the present, Optum Maryland withheld more than $680,000 in claim reimbursement funds that Omnis Health was entitled to receive" and that, "in 2020 alone, Optum Ma[r]yland withheld more than $400,000." ECF 3, ¶ 32.

As the State aptly observes, albeit in another context, "there are many reasons why a particular [Medicaid reimbursement] claim may be denied, including without limitation: the service was not delivered in compliance with the applicable COMAR regulations; the service was not medically necessary; the service was investigational or experimental; the service was not covered in the particular setting or for the particular reason; etc." ECF 22 at 14 (citing COMAR §§ 10.09.59.06; 10.09.59.07; 10.09.80.05; 10.09.80.06; 10.09.95.04; and 10.09.95.05) (emphasis omitted); *see also* ECF 19-1 at 16. Here, as in *Jarvis*, 2022 WL 4234835, at *3, plaintiff alleges in conclusory fashion that it met the requirements to receive payment from Optum Maryland. Specifically, plaintiff alleges that its claims were submitted "according to proper procedures," ECF 3, ¶ 69(a), and "in accordance with applicable guidelines." *Id.* ¶ 82(a).

In any event, even if the allegations in paragraphs 69 and 82 of the Complaint are otherwise sufficient to allege entitlement to payment, the allegations are not set forth in Count I or

incorporated by reference into Count I.  Rather, they are lodged in Count II (negligence) and Count IV (tortious interference with business relationships), respectively.

As stated, the Supreme Court has made clear that § 1981 employs a but for causation standard, rather than the motivating factor test.  *Comcast Corp.*, 589 U.S. at 336–40.  The Court said, *id.* at 341: "To prevail [on a § 1981 claim], a plaintiff *must initially plead* and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." (Emphasis added).  The allegations of the Complaint, even if proven, do not satisfy the causation standard.

For these reasons, Count I is subject to dismissal, without prejudice, and with leave to amend.

## IV.  Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq. (Count VI) – State of Maryland

The State has moved to dismiss Count VI, lodged pursuant to 42 U.S.C. § 2000d.[10]  It states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  The terms "program or activity" and "program" are defined, *inter alia*, as "all of the operations of--(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]"  42 U.S.C. § 2000d-4a(1).

In the Complaint, plaintiff alleges, ECF 3, ¶ 96: "From 2020 through the present, multiple minority-owned healthcare providers, including Omnis Health, alerted Maryland to systematic

---

[10] 42 U.S.C. § 2000d is also referred to as § 601 of the Civil Rights Act of 1964.  *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

discriminatory practices by Optum Maryland in its administration of the Public Behavioral Health System, including: (a) disparate treatment in claims processing and approval; (b) discriminatory application of recoupment practices; (c) lack of transparency in accounting provided to minority-owned providers; and (d) preferential treatment given to White-owned healthcare providers[.]" According to the Complaint, "[d]espite receiving these complaints and having actual knowledge of Optum Maryland's discriminatory practices, Maryland: (a) failed to investigate the reported disparities in treatment between minority-owned and White-owned healthcare providers; (b) continued to allow Optum Maryland to discriminate against minority-owned providers in its administration of the Public Behavioral Health System; (c) failed to implement any oversight mechanisms to prevent racial discrimination in claims processing; (d) failed to require Optum Maryland to provide transparent accounting of recoupments to minority-owned providers; and (e) failed to take corrective action when presented with evidence of disparate treatment." *Id.* ¶ 97. Further, the Complaint states, *id.* ¶ 98: "Maryland's deliberate indifference to known discriminatory practices by its Administrative Service Organization violates Omnis Health's rights under Title VI . . . ." Based on the foregoing, plaintiff alleges, *id.* ¶ 99: "Maryland's actions and inactions have caused Omnis Health to be excluded from participation in, be denied the benefits of, and/or be subjected to discrimination under the Public Behavioral Health System on the basis of race."

"[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). "'To survive a motion to dismiss under Title VI, a plaintiff must plead sufficient facts supporting (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin.'" *Lucas v. VHC Health*, 128 F.4th 213, 221 (4th Cir.

2025) (quoting *Evans v. 7520 Surratts Rd. Operations, LLC*, PX-21-01637, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021)); *see also Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 355 (D. Md. 2022) (same).

Plaintiff satisfies the first element, as the Complaint alleges that the State receives federal financial assistance to administer its Public Behavioral Health System. *See, e.g.*, ECF 3, ¶ 95 ("At all relevant times, Maryland's Public Behavioral Health System received federal financial assistance."). Turning to the second element, the Supreme Court has made clear that "'Title VI itself directly reach[es] only instances of intentional discrimination.'[]" *Sandoval*, 532 U.S. at 281 (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)); *see also Carroll*, 650 F. Supp. 3d at 356 (recognizing the same). Therefore, Section 601 "does not comprehend practices that have a disparate discriminatory impact." *Rogers v. Bd. of Educ. of Prince George's Cnty.*, 859 F. Supp. 2d 742, 747 (D. Md. 2012).

As discussed, at the motion to dismiss stage, "'a complaint need not establish a prima facie case of discrimination.'" *Carroll*, 650 F. Supp. 3d at 358 (quoting *Evans*, 2021 WL 5326463, at *3); *see also Wang v. Bethlehem Cent. Sch. Dist.*, No. 21-CV-1023, 2022 WL 3154142 at *35 (N.D.N.Y. Aug. 8, 2022) (stating that "a plaintiff need only 'alleg[e] facts giving rise to a plausible minimal inference of bias' on the basis of race.") (quoting *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103–104 (2d. Cir. 2022)). But, "to survive a motion to dismiss under Title VI, a plaintiff must allege some facts to support that the defendant's 'alleged misconduct was motivated by race.'" *Carroll*, 650 F. Supp. 3d at 356 (quoting *Evans*, 2021 WL 5326463, at *4). Put another way, a plaintiff "must do more than simply allege his unfavorable treatment was on account of 'discriminatory animus.'" *Evans*, 2021 WL 5326463, at *4.

The State urges dismissal of Count VI for three reasons.  First, the State contends, ECF 18-1 at 21: "Plaintiff does not allege in the Complaint that Plaintiff is the intended beneficiary of, an applicant for, or a participant in the Maryland Medical Assistance Program."  Second, the State asserts, *id.* at 22: "Nowhere in the Complaint does Plaintiff allege that the supposed discrimination was intentional."  Third, the Complaint "fails to allege any facts with any specificity as to which of its claims were supposedly improperly denied on a discriminatory basis."  *Id.*

Omnis counters, ECF 21 at 16: "Courts have consistently held that entities who are participants in or intended beneficiaries of federal programs may bring Title VI claims."  Omnis also argues that the Complaint adequately alleges intentional discrimination based on theories of both direct discrimination and deliberate indifference.  *Id.* at 17.  Plaintiff did not respond to the State's argument concerning the Complaint's failure to specify which reimbursement claims were improperly denied.  *See* ECF 21 at 16–18.

The State's first contention amounts to a zone of interest argument.  The "zone-of-interests limitation" originated in the context of the Administrative Procedure Act ("APA").  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  But, the Supreme Court has made clear that the zone-of-interests test applies to "all statutorily created causes of action."  *Id.*; *see also Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 605 U.S. ___, 145 S. Ct. 1984, 1990 (2025).  The test asks "whether the statute grants the plaintiff the cause of action that he asserts."  *Bank of Am. Corp. v. Miami*, 581 U.S. 189, 196–97 (2017); *see R. J. Reynolds Vapor Co.*, 145 S. Ct. at 1991 (stating that "a plaintiff must belong to the class of persons to whom the statute grants a right to sue."); *Lexmark Int'l, Inc.*, 572 U.S. at 127 ("Whether a plaintiff comes within the zone of interests" turns on "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim") (internal quotation marks omitted).

35

Put another way, whether a "plaintiff comes within the zone of interests is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc.*, 572 U.S. at 127 (citation and internal quotations omitted). Notably, unlike standing and ripeness, the test is not jurisdictional because "'the absence of a valid . . . cause of action does not implicate . . . the court's statutory or constitutional power to adjudicate the case.'" *Id.* at 128 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002)); *see also R. J. Reynolds Vapor Co.*, 145 S. Ct. at 1991 n.3.

In the context of the APA, the Supreme Court has said that the zone-of-interests test "is not meant to be 'especially demanding.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clarke v. Sec. Industry Ass'n*, 479 U.S. 388, 399 (1987)). In that context, a plaintiff need only demonstrate that the "'interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected or regulated by the statute . . . in question.'" *Bennett v. Spear*, 520 U.S. 154, 163 (1997) (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970)) (emphasis added); *see also Patchak*, 567 U.S. at 225 (explaining that it "always conspicuously" includes the word "'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff."). The Court has made clear, however, "'that the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the generous review provisions of the APA may not do so for other purposes.'" *Lexmark Int'l, Inc.*, 572 U.S. at 130–31 (quoting *Bennett*, 520 U.S. at 163) (some internal quotations omitted).

In my view, Omnis falls within the zone of interest protected by 42 U.S.C. § 2000d. First, although Omnis is a corporation, Omnis qualifies as a "person" for purposes of the statute. *See Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 715 (4th Cir. 2014) (collecting cases and stating: "[W]e agree with the conclusions reached by our sister circuits that prudential considerations [*i.e.*, the zone of interest doctrine] should not bar review of a claim of race discrimination suffered by such a corporation during its participation in a program that has received federal funding assistance.").

Second, "Title VI does not require that an injured party be the intended beneficiary of federal funds." *Id.* Instead, the "determinative inquiry" is whether the plaintiff alleges that "it suffered injury based on race discrimination and was either participating or seeking to participate in a federally funded activity, *or* was the intended beneficiary of those federal funds." *Id.* at 716 (emphasis added).

Omnis plainly alleges that it is a minority-owned business; suffered injury based on race discrimination; and was participating in Maryland's Behavioral Health System, a federally funded activity. ECF 3, ¶ 12 ("At all relevant times, MDH received federal financial assistance to operate Maryland's Public Behavioral Health System."); *id.* ¶ 13 ("Omnis Health . . . provides essential services as part of the Maryland Public Behavioral Health System."); *id.* ¶ 14 ("Under its Public Behavioral Health System, Maryland is obligated to reimburse healthcare providers for services rendered to Medicaid patients. Medicaid is a joint federal and state program that assists with medical costs for individuals with limited income and resources. Maryland administers Medicaid and pays medical bills using both federal and state funds."); *id.* ¶ 95 ("At all relevant times, Maryland's Public Behavioral Health System received federal financial assistance."). Therefore, plaintiff has adequately pleaded facts that satisfy the zone of interest test.

I next consider whether the Complaint adequately alleges intentional discrimination. The claim against the State is expressly based on the State's "deliberate indifference" to discriminatory practices of Optum Maryland. ECF 3, ¶ 98.

Intentional discrimination under Title VI can be shown by deliberate indifference. *See Ricketts v. Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 521 (4th Cir. 2025) (ruling that the plaintiff's allegations were "sufficient to state a Title VI claim for deliberate indifference"); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014) (adopting "deliberate indifference as a form of intentional discrimination . . . in the Title VI context"); *see also Lucas*, 128 F.4th at 221. Deliberate indifference "'requires a deliberate or conscious choice to ignore something.'" *Lucas*, 128 F.4th at 222 (quoting *Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022)). However, relying on Title IX precedent, the *Lucas* Court stated, 128 F.4th at 222: An "'institution can be held liable [for deliberate indifference] only if an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination . . . and fails adequately to respond.'" (Quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007)) (en banc) (alterations in *Lucas*).[11]   Therefore, plaintiff must plausibly allege facts "that some [State] official with the authority to address [plaintiff's] problem both had knowledge of [plaintiff's] federally protected rights and nonetheless failed to help [plaintiff]." *Koon*, 50 F.4th at 407.

As stated, plaintiff alleges that from 2020 through the filing of the Complaint in November 2024, plaintiff and other minority behavioral health care providers "alerted Maryland to systematic discriminatory practices by Optum Maryland in its administration of the Public Behavioral Health

---

[11] "Title VI claims 'are parallel' to Title IX claims and 'operate in the same manner.'" *Ricketts*, 125 F.4th at 521 (citation omitted).

System . . . ." ECF 3, ¶ 96. Omnis also alleges that, despite "having actual knowledge of Optum Maryland's discriminatory practices," the State essentially did nothing to address them. *Id.* ¶ 97. But, plaintiff does not allege that a particular State official, with the authority to address the alleged discrimination, had actual knowledge of the alleged discrimination and failed to act upon the information. Indeed, Omnis does not plead any specific facts regarding how or when plaintiff or other minority-owned behavioral health providers communicated with the State. *See generally* ECF 3.

Vague references to alerting "Maryland" of the alleged discrimination does not suffice to plausibly allege deliberate indifference. As stated, an "'institution can be held liable [for deliberate indifference] *only if* an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination . . . and fails adequately to respond.'" *Lucas*, 128 F.4th at 222 (emphasis added; citation omitted). Yet, there are no allegations regarding who from the State was provided notice or how notice was provided. Therefore, the Complaint does not give rise to an inference that an official with authority to address the alleged discrimination had "actual knowledge" of the allegations. *Id.*; *see also Dallas v. Sheidy*, MJM-24-952, 2025 WL 958565, at *5 (D. Md. Mar. 31, 2025) (dismissing sex discrimination claim based on deliberate indifference because "there is no allegation that an official with authority to address the discrimination received actual notice of the alleged discriminatory behavior.").

In the Opposition, plaintiff also appears to assert a direct discrimination theory against the State. *See* ECF 21 at 17. Omnis relies on facts from Count I that are not set forth in, or incorporated by reference in, Count VI. *Id.* (citing ECF 3, ¶¶ 56–57). In any event, those allegations, in addition to the ones on which plaintiff relies in paragraphs 45 through 51 of the Complaint, are directly

lodged against "Optum" and "Optum Maryland," not the State.  To plausibly allege that the State intentionally discriminated against Omnis, plaintiff cannot rely on facts that, by their own terms, do not concern the State.

For the reasons stated above, Count VI is subject to dismissal, without prejudice, and with leave to amend.

### V.  Conclusion

Based on the foregoing, both federal claims (Counts I and VI) are subject to dismissal, without prejudice.  Absent an amended complaint that adequately pleads a federal claim, the Court need not exercise supplemental jurisdiction as to the remaining State law claims.  Therefore, at this juncture, I decline to address the remaining arguments advanced by defendants as to the State law claims.

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, a district court "may decline to exercise supplemental jurisdiction over a claim" if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c) (emphasis added).

The Fourth Circuit has stated that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see Hinson v. Norwest Fin. S.C., Inc.*, 239

F.3d 611, 617 (4th Cir. 2001) (in the context of a case removed from state court, if the federal claims fail, the district court has discretion to remand the case); *see also Spanos v. Vick*, 576 F. Supp. 3d 361, 369 (E.D. Va. 2021).  The Court has also stated: "Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, 'certainly[ ] if the federal claims are dismissed before trial . . . the state claims should be dismissed' without prejudice." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (per curiam) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)) (some internal citations omitted; alterations in *Alexandria*).  The Court reasoned that "when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction—'considerations of judicial economy, convenience and fairness to litigants'—are typically absent." *Alexandria Resident Council, Inc.*, 11 F. App'x at 287 (citation omitted); *see also Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 (1988) (stating that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.").  Indeed, the Fourth Circuit "evince[s] a strong preference that state law issues be left to State courts in the absence of diversity or federal question jurisdiction . . . ." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (per curiam); *see also Waybright v. Frederick Cnty.*, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so."), *cert. denied*, 555 U.S. 1069 (2008).

This case is in its early stages.  No scheduling order has been issued and no discovery has been conducted.  Therefore, unless Omnis cures the pleading deficiencies with regard to its federal

claims, the Court may elect not to exercise supplemental jurisdiction. *See Arrington*, 369 F. App'x at 423 (indicating a "strong preference" that district courts dismiss or remand cases where the claims supporting federal question jurisdiction are dismissed); *see Alexandria Resident Council, Inc.*, 11 F. App'x at 287 (when no federal claims remain, the state claims "'should'" be dismissed) (citation omitted).

In this regard, it is noteworthy that the case presents at least one novel or complex issue of Maryland law, for which litigation in a State court would be preferable. *See* 28 U.S.C. § 1367(c)(1) (stating that district court has discretion to decline to exercise supplemental jurisdiction over a claim if it "raises a novel or complex issue of State law"). Specifically, defendants contend that the Complaint should be dismissed in its entirety, based on plaintiff's failure to exhaust its State administrative remedies. ECF 18-1 at 25; ECF 19-1 at 26; ECF 22 at 13–14.

Of course, the doctrine of administrative exhaustion is not a novel concept in Maryland. But, the Maryland case law on the topic almost exclusively concerns administrative remedies created by statute. Here, the issue of exhaustion implicates procedures created by an agency. *See* ECF 19-5 at 2 (document titled "Procedure For Resolving Disputes Over Negative Balances," issued jointly by the MDH and Optum Maryland). The parties cite no pertinent case law on the topic, and the Court has found only one case that even tangentially addresses the matter. *See Green Healthcare Sols., LLC v. Natalie M. LaPrade Maryland Med. Cannabis Comm'n*, 254 Md. App. 547, 274 A.3d 530 (2022) (briefly addressing whether an agency can create an exhaustion requirement by regulation). Moreover, in Maryland, exhaustion of administrative remedies is "'treated like a jurisdictional question.'" *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 487, 27 A.3d 143, 150 (2011) (citation and emphasis omitted); *see Priester v. Baltimore Cnty., Md.*, 232 Md. App. 178, 190, 157 A.3d 301, 308 (2017).

If plaintiff seeks to amend its Complaint, it must do so by **September 10, 2025**.   If an Amended Complaint is filed, but the federal claims are not viable, the Court will then consider the matter of supplemental jurisdiction as to the State law claims.  If no Amended Complaint is filed, the Court will determine whether to remand the case to the Circuit Court for Baltimore City.

An Order follows.


Date:    August 20, 2025                                _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge

43